UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| AMOL AKALKOTKAR,<br><br>    Plaintiff,<br><br>vs.<br><br>EVOKE PHARMA, INC., MATTHEW J. D'ONOFRIO, GREG PYSZCZYMUKA, KENNETH J. WIDDER, M.D., CAM L. GARNER, TODD C. BRADY, M.D., PH.D., BENJAMIN SMEAL, VICKIE W. REED, MALCOLM R. HILL, PHARM.D, and QOL MEDICAL, LLC.<br><br>    Defendants. | Case No. 25-cv-1817 |

**COMPLAINT**

Plaintiff Amol Akalkotkar ("Plaintiff"), by and through their attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Evoke Pharma, Inc. ("Evoke Pharma" or the "Company"), the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Evoke Pharma, the "Evoke Pharma Defendants"), and QOL Medical, LLC ("QOL Medical" or "Parent") for their violations of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States Securities and

1

Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9 ("Rule 14d-9"). Plaintiff's claims arise in connection with the proposed tender offer ("Tender Offer") by QOL Medical's wholly controlled subsidiary, QOL-EOS Merger Sub, Inc., an entity formed for the sole purpose of facilitating the acquisition of Evoke Pharma by QOL Medical, (collectively with Parent, "QOL-EOS"), to acquire all of the issued and outstanding shares of Evoke Pharma (the "Proposed Transaction").

2. On or about November 3, 2025, Evoke Pharma and QOL-EOS entered into an agreement and plan of merger, (the "Merger Agreement"), whereby stockholders of Evoke Pharma common stock will receive $11.00 in cash for each share of Evoke Pharma common stock they own (the "Offer Price" or "Merger Consideration").

3. On or about November 17, 2025, in order to convince Evoke Pharma's stockholders to tender their shares, QOL-EOS and the Board authorized the filing of a materially incomplete and misleading Schedule TO-T Tender Offer Statement (the "Tender Offer Statement") and Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC, which contains materially incomplete and misleading information concerning Evoke Pharma's historical price data information.

4. The Tender Offer is scheduled to expire one minute after 11:59 p.m., Eastern Time, on December 15, 2025, (the "Expiration Date") and, upon information and belief, Evoke Pharma's public stockholders have already begun to tender their stock based on the incomplete and misleading information in the Recommendation Statement. It is imperative that the Tender Offer Statement and Recommendation Statement be corrected immediately so public stockholders may make an informed determination on whether to tender their shares.

5. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin

Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Evoke Pharma's stockholders, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391 as Plaintiff allege violations of Sections 14(d)(4) and 14(e) of the Exchange Act.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Vigman*, 764 F.2d at 1316.

8. Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(2). A significant portion of events occurred in this District because Evoke Pharma and QOL-EOS prepared for SEC filings, in part, material information, including a letter agreement prior to the execution of the Proposed Transaction, with its commercialization partner Eversana Life Science Services, LLC ("Eversana"), an entity headquartered in this

District.  *Santore v. Swaminathan*, No. 17 cv 5742, 2018 U.S. Dist. LEXIS 33352, at *23 (N.D. Ill. Mar. 1, 2018) ("the standard for establishing venue under [the Exchange Act] is not a rigorous one") (quoting *Haskett v. Reliv' Int'l.*, No 94 c 1461, 1994 U.S. Dist. LEXIS 5678, at *6 (N.D. Ill. Apr. 29, 1994)); *see also City of Miami Gen. Emples. & Sanitation Emples. Ret. Trust v. Casey*, No. 22-cv-2371, 2023 U.S. Dist. LEXIS 239991, at *4 (S.D. Ohio Mar. 27, 2023) ("The rule for establishing venue under the Securities Exchange Act is more permissive than under 28 U.S.C. § 1391, consistent with the intent of the venue and jurisdiction provision in the securities laws 'to grant potential plaintiffs liberal choice in their selection of a forum.'") (quoting *Wayne Cnty. Emples.' Ret. Sys. v. MIC Inv. Corp.*, 604 F. Supp. 2d 969, 973 (E.D. Mich. 2009)).  Further, Defendants were aware that the Tender Offer Statement and/or the Recommendation Statement would be reviewed in this District.  *See Sarantakis v. Gruttadauria*, No. 02 c 1609, 2003 U.S. Dist. LEXIS 4002, at *23 (N.D. Ill. Mar. 17, 2003) ("Venue is appropriate in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district."); *see also Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 197 (E.D. Pa. Mar. 6, 1974) ("Venue will be sustained in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district, even if the defendant never has been physically present in that district."); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 106 (10th Cir. 1971) (finding venue proper in the District of Utah where the defendant released a false and fraudulent press statement that was printed in the Wall Street Journal and was read and relied upon by the plaintiff in Salt Lake City, Utah).

## **PARTIES**

9. Plaintiff is, and has continuously throughout all times relevant hereto, been the owner of Evoke Pharma common stock.

4

10. Defendant Evoke Pharma is a Delaware corporation and pharmaceutical company focusing on GI disorders and diseases. The Company's common stock trades on the Nasdaq Capital Market (the "Nasdaq") under the ticker symbol "EVOK."

11. Defendant Matthew J. D'Onofrio ("D'Onofrio") is, and has been at all relevant times, Evoke Pharma's Chief Executive Officer and a director of the Company.

12. Defendant Cam L. Garner ("Garner") is, and has been at all relevant times, the Chair of the Board of Directors.

13. Defendant Todd C. Brady, M.D., Ph.D. ("Brady") is, and has been at all relevant times, a director of the Company

14. Defendant Malcolm R. Hill, Pharm. D., ("Hill") is, and has been at all relevant times, a director of the Company.

15. Defendant Kenneth J. Widder, M.D., ("Widder") is, and has been at all relevant times, a director of the Company.

16. Defendant Vickie W. Reed ("Reed") is, and has been at all relevant times, a director of the Company.

17. Defendant Ben Smeal ("Smeal") is, and has been at all relevant times, a director of the Company.

18. Defendant Greg Pyszczymuka ("Pyszczymuka") is, and has been at all relevant times, a director of the Company.

19. The defendants identified in ¶¶ 11-18 are collectively referred to as the "Individual Defendants" or the "Board."

20. Defendant QOL Medical is a privately held biopharmaceutical company which focuses on research and clinical solutions for rare GI disorders and diseases.

# SUBSTANTIVE ALLEGATIONS

## A. Background on the Transaction

21. On January 28, 2025, representatives of the Company's management met with their legal counsel, Latham & Watkins LLP ("Latham & Watkins"), to review the Company's operations and the Company's interest in pursuing potential strategic transactions.

22. On March 28, 2025, a "Party A" submitted its first proposal to acquire the Company for $8.17 per share in cash ("Party A's First Proposal").

23. Concurrently, in late March 2025, QOL Medical, expressed its interest in a potential acquisition of the Company.

24. On April 10, 2025, Party A submitted its second proposal to acquire the Company for $10.00 per share in cash (Party A's Second Proposal"), a proposal that was determined to be in the best interest of the Company, leading to the Company and Party A to enter into exclusivity agreements while a potential deal was negotiated.

25. Following the expiration of exclusivity agreements between the Company and Party A, QOL Medical submitted its first proposal to the Company ("First QOL Proposal").

26. While the Company's Board considered the First QOL Proposal, a "Party B" submitted its first proposal ("Party B's First Proposal") on September 4, 2025, to acquire the Company at $12.00 per share.

27. On September 12, 2025, QOL Medical submitted its second proposal to acquire the Company for $12.00 per share with an accompanying termination fee of $1.5 million payable by the Company under select circumstances.

28. On September 18, 2025, Party B declined to pursue a potential acquisition of the Company.

29. On October 1, 2025, QOL Medical submitted its third proposal ("QOL's Third Proposal") to acquire the Company for $11.00 per share in addition to exclusivity agreements.

30. On October 2, 2025, the Company and QOL Medical executed QOL's Third Proposal, thereby implementing an exclusivity agreement between the Company and QOL.

31. On October 13, 2025, the Company and QOL reviewed a draft merger agreement which included, among other things, the execution of a letter agreement with Eversana prior to the execution of the draft merger agreement.

32. On November 3, 2025, after further deliberation and negotiation, the Company and QOL Medical executed paperwork now representing the Proposed Transaction.

33. The Individual Defendants breached their fiduciary duties owed to the Company's stockholders by agreeing to the Proposed Transaction for the unfair Offer Consideration, by circulating the misleading and incomplete Recommendation Statement, which included materially false statements regarding the Company's historical pricing data for its common stock, the length of time of the public trading of Evoke Pharma common stock, and the material relationship of Evoke Pharma and its financial advisor in the last two years.

B. **The Proposed Transaction**

34. On November 4, 2025, Evoke Pharma and QOL Medical issued a joint press to announce the Proposed Transaction, which stated, in relevant part, as follows:

***QOL Medical to Acquire All Outstanding Shares of Evoke for $11.00 Per Share in Cash***

*Represents a 139.7% premium to most recent Nasdaq closing price*

*Transaction expected to close by the end of 2025*

SOLANA BEACH, Calif., and VERO BEACH, Fla., Nov. 04, 2025 (GLOBE NEWSWIRE) -- Evoke Pharma, Inc. (NASDAQ: EVOK) ("Evoke"), a specialty pharmaceutical company focused primarily on treatments for gastrointestinal (GI) diseases with an emphasis on GIMOTI® (metoclopramide) nasal spray, and QOL Medical, LLC

("QOL Medical"), a privately held biopharmaceutical company specializing in treatments for GI and rare diseases, today announced that they have entered into a definitive agreement pursuant to which QOL Medical will acquire Evoke for $11.00 per share in cash at closing. The transaction has been unanimously approved by the Boards of Directors of both companies and will be conducted via a tender offer.

The transaction, expected to close by the end of 2025, reflects the strategic value of its commercial product, GIMOTI®, the first and only FDA-approved nasal spray formulation of metoclopramide for the treatment of acute and recurrent diabetic gastroparesis in adults. The purchase price represents a premium of 139.7% to Evoke's closing share price on November 3, 2025.

"Since inception, Evoke has remained singularly focused on serving the diabetic gastroparesis community by developing and delivering a new treatment option for a historically underserved population," said Matt D'Onofrio, Founder and Chief Executive Officer of Evoke. "This transaction recognizes the importance of what we've built, a differentiated, patient-centered therapy with a growing commercial presence. QOL Medical brings strong commercial GI experience, manufacturing capabilities, and a commitment to continuity, making them an ideal partner for the next chapter of our mission."

"We are excited about the strategic alignment between QOL and Evoke," said Derick Cooper, Chief Executive Officer of QOL Medical. "Evoke has developed an innovative therapy that addresses a significant unmet need in gastrointestinal care, offering meaningful clinical benefits for patients. GIMOTI strengthens our GI portfolio and advances our mission to support patients living with rare and underserved gastrointestinal conditions."

"With our deep experience in commercializing treatments for GI disorders, this acquisition is a natural extension of our capabilities and commitment", Cooper added. "It enables us to build on our existing infrastructure, expand our reach among patients and healthcare providers, and further establish QOL Medical as a leader in specialty gastrointestinal care."

**Transaction Terms**

Under the terms of the merger agreement, QOL Medical, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of Evoke at a price of $11.00 per share in cash at closing. The closing of the tender offer will be subject to certain conditions, including the tender of at least a majority of the outstanding shares of Evoke at such time, and other customary closing conditions. Upon the successful completion of the tender offer, a subsidiary of QOL Medical will merge into Evoke and any remaining shares of common stock of Evoke will be cancelled and converted into the right to receive the same price per share payable in the tender offer. The transaction is not subject to a financing condition and QOL Medical intends to finance the transaction using cash on hand. The transaction is expected to close in the fourth quarter of 2025, subject to the terms of the merger agreement.

35. The Merger Consideration being offered to Evoke Pharma's public stockholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the Recommendation Statement and Tender Offer Statement fail to disclose accurate historical price data information for Evoke Pharma's stock during 2024 and 2023, respectively.

**C.     The Preclusive Deal Protection Devices**

36. The Merger Agreement contains onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

37. The Merger Agreement provides for a termination fee payable to Parent by the Company in the event the transaction is not consummated in the amount of $1.5 million.

38. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

**D.     The SEC Filings Are Incomplete and Misleading**

39. On or about November 17, 2025, the Board and Parent authorized the filing of the materially incomplete and misleading Tender Offer Statement and Recommendation Statement with the SEC.

40. 17 C.F.R. § 240.14d-3 states, in part:

(a) Filing and transmittal. No bidder shall make a tender offer if, after consummation thereof, such bidder would be the beneficial owner of more than 5 percent of the class of the subject company's securities for which the tender offer is made, unless as soon as practicable on the date of the commencement of the tender offer such bidder:

  (1) Files with the Commission a Tender Offer Statement on Schedule TO (§ 240.14d-100), including all exhibits thereto;

(2) Delivers a copy of such Schedule TO, including all exhibits thereto:

(i) To the subject company at its principal executive office[.]

41. Item 2 of 17 C.F.R. § 240.14d-100 requires that the Tender Offer Statement "furnish the information required by Item 1002(a) through (c) of Regulation M-A," found at 17 C.F.R. § 229.1002.

42. 17 C.F.R. § 229.1002(c) requires that the Tender Offer Statement "[i]dentify the principal market in which the subject securities are traded and state the high and low sales prices for the subject securities in the principal market … *for each quarter* during the past two years." (emphasis added).

43. The Offer to Purchase attached to the Schedule TO provided data on the High and Low Trading Prices for Evoke Pharma during each quarter for the fiscal years of 2023 and 2024.

44. Specifically, the Offer to Purchase indicated that Evoke Pharma's "High Trading Price" during the Third Quarter of 2023 $19.98 per share:

|  | High | Low |
|---|---|---|
| **Fiscal Year Ending December 31, 2025** | | |
| Fourth Quarter (through November 13, 2025) | $10.79 | $4.23 |
| Third Quarter | $ 9.88 | $2.52 |
| Second Quarter | $ 3.92 | $1.94 |
| First Quarter | $ 5.40 | $2.50 |

|  | High | Low |
|---|---|---|
| **Fiscal Year Ending December 31, 2024** | | |
| Fourth Quarter | $12.32 | $ 4.02 |
| Third Quarter | $ 8.00 | $ 6.84 |
| Second Quarter | $ 8.10 | $ 4.80 |
| First Quarter | $13.80 | $ 6.70 |
| **Fiscal Year Ending December 31, 2023** | | |
| Fourth Quarter | $18.00 | $12.24 |
| Third Quarter | $19.98 | $11.03 |
| Second Quarter | $28.80 | $16.56 |
| First Quarter | $71.52 | $21.60 |

Offer to Purchase at 26-7.

45. Similarly, the Offer to Purchase indicated that Evoke Pharma's "Low Trading Price" during the Third Quarter of 2024 was $6.84 per share. *Id*.

46. Notwithstanding anything in the Offer to Purchase that was incorporated by reference into the Tender Offer Statement and attached and referenced as an exhibit in the Recommendation Statement, the "high" and "low" quarterly figures referenced above are not accurately listed.

47. Evoke Pharma's trading history on Nasdaq's website confirms that Evoke Pharma's common stock traded well above $19.98 per share during the Third Quarter of 2023:



https://www.nasdaq.com/market-activity/stocks/evok/advanced-charting?timeframe=6m (last accessed: November 17, 2025).

48. Similarly, Evoke Pharma's trading history on Nasdaq's website confirms that Evoke Pharma's common stock traded well below $6.84 per share almost the entire Third Quarter of 2024:



https://www.nasdaq.com/market-activity/stocks/evok/advanced-charting?timeframe=6m (last accessed: November 17, 2025).

49. The SEC requires the full and fair disclosure of accurate historical trading price information because such information "could be viewed as '*per se* material or 'presumptively material' to investors" deciding whether or not to support the transaction that is being proposed.

*See, e.g.,* George S. Georgiev, *Too Big to Disclose: Firm Size and Materiality Blindspots in Securities Regulation*, 64 UCLA L. Rev. 602, 619 n.83 (2017); *cf. In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 389-90 (S.D.N.Y. 2004) (finding plaintiff failed to state a claim because they "failed to allege that the historical stock prices were falsely described").

50. One reason underlying the requirement of full and fair disclosure of the high and low sales prices for the securities during each quarter of the past two years is to ensure that investors understand the short-, medium, and longer-term trends in the stock price.

## COUNT I

**(Against All Defendants for Violation of Section 14(e) of the Exchange Act)**

48. Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

49. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

50. Defendants violated § 14(e) of the Exchange Act by issuing the Tender Offer Statement and Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51. Defendants prepared, reviewed, and/or disseminated the Tender Offer Statement

and Recommendation Statement. Nonetheless, they misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer and the intrinsic value of the Company.

52. In doing so, Defendants made untrue statements and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e). The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

53. The omissions and incomplete and misleading statements in the Tender Offer Statement and Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view the information identified above which was not fairly and fully disclosed in the Tender Offer Statement and Recommendation Statement as altering the "total mix" of information made available to stockholders.

54. Defendants knowingly or with deliberate recklessness failed to fully and fairly disclose the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the material information in connection with approving the Proposed Transaction, they did not fairly and fully disclose it to the public investors, rendering certain portions of the Tender Offer Statement and Recommendation

Statement materially incomplete and therefore misleading.

55. The misrepresentations and omissions in the Tender Offer Statement and Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT II

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

56. Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

57. Defendants have caused the Tender Offer Statement and Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

58. Section 14(d)(4) of the Exchange Act and SEC Rules 14d-3 and 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

59. SEC Rules 14d-3 and 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act require full and fair disclosure of all material information in connection with any solicitation of stockholders to participate in a tender offer.

60. The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9 if other SEC regulations specifically require disclosure of the

omitted information.

61. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, that render the Recommendation Statement misleadingly incomplete. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Tender Offer Statement and Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be misrepresented or omitted from the Tender Offer Statement and Recommendation Statement, rendering them materially incomplete and therefore misleading.

62. The misrepresentations and omissions in the Tender Offer Statement and Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of the right to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Date.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or taking any steps to consummate the Proposed Transaction, until the Company issues curative disclosures that fully address the deficiencies identified herein;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages sustained as a

result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 18, 2025.       **ADEMI & FRUCHTER LLP**

                  By: */s/ John D. Blythin*
                     Guri Ademi Ademi (WI SBN 1021729)
                     Jesse Fruchter (WI SBN 1097673)
                     John D. Blythin (WI SBN 1046105)
                     3620 East Layton Avenue
                     Cudahy, Wisconsin 53110
                     Tel. 414-482-8000
                     Fax 414-482-8001
                     gademi@ademilaw.com
                     jfruchter@ademilaw.com
                     jblythin@ademilaw.com

                     *Attorneys for Plaintiff*